PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff and the Putative Class

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DALLAS JAMES, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PUSHNAMI, LLC, a Delaware limited liability company,<br><br>Defendant. | Case No. 3:26-cv-04620-BAS-DDL<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR UNLAWFUL SPAMMING AND INVASION OF PRIVACY**<br><br>JURY TRIAL DEMANDED |

## I. NATURE OF ACTION

1. This case concerns an unsolicited commercial e-mail built around a simple and concrete falsehood: that a check already existed for Plaintiff Dallas James ("Plaintiff") and awaited only her verification. On August 10, 2026, Plaintiff received an e-mail from "Stimulus Info" with the subject line "PENDING > Check Payout Info Update for Dallas." The body addressed Plaintiff by name, stated that "[a] check disbursement is pending your verification," and instructed her to "Review disbursement details." There was no check, no pending disbursement, and no payout awaiting Plaintiff. The transaction was invented to induce a click.

2. The click did not lead to a neutral information page. It ultimately delivered Plaintiff into a personalized lead-generation funnel at UNEMPLOYMENTSUPPORT.NET through a URL containing an affiliate identifier, a unique transaction identifier, source sub-identifiers, and Plaintiff's own name and e-mail address. Those fields exist to identify the source of traffic, attribute the consumer to a campaign, and monetize the resulting interaction.

3. Plaintiff's post-filing investigation identified Defendant Pushnami, LLC ("Defendant" or "Pushnami") as a material participant in the advertising and data infrastructure used by UNEMPLOYMENTSUPPORT.NET. Public technical records show Pushnami technology communicating with the UNEMPLOYMENTSUPPORT.NET environment, and Pushnami publicly describes an advertising network that serves advertisements on Pushnami properties and enabled third-party properties, tracks source IDs and click parameters, and supplies technology for audience acquisition, targeting, and re-engagement.

4. Pushnami also publicly acknowledges that its technology collects and processes information from users' browsers and devices, including e-mail addresses, IP addresses, device push tokens, advertising identifiers, referring URLs, interaction and transaction information, and other device and network data. Pushnami's published terms state that Pushnami and its licensees jointly own certain information collected by its

software and may use, share, market, license, sell, store, and otherwise exploit that information to the extent permitted by law.

5. Upon information and belief, Pushnami transmitted, procured the transmission of, and/or materially participated in the delivery and monetization of the challenged commercial e-mail through its advertising, publisher, or traffic-acquisition network. The challenged message was not random traffic that happened to arrive at a Pushnami-enabled property. It carried Plaintiff through a tokenized campaign path into an affiliate-coded destination whose technical environment communicated with Pushnami and whose commercial purpose was to turn the induced visit into monetizable consumer traffic.

6. Plaintiff therefore brings claims under California Business and Professions Code section 17529.5, California Penal Code section 631(a), and California common law, on behalf of herself and similarly situated consumers. Plaintiff pleads Pushnami's transmission and campaign role on information and belief because the campaign-account, publisher, source-ID, insertion-order, routing, payout, and delivery records necessary to identify the precise transmission chain are uniquely within Pushnami and its commercial partners.

## II. PARTIES, JURISDICTION, AND VENUE

7. Plaintiff Dallas Pottish is a citizen and resident of California. She owns and uses the e-mail address dallaspottish@gmail.com. Plaintiff received the challenged commercial e-mail in California, opened it in California, and interacted with the resulting online funnel from a personal device while physically present in California. She was delivered to UNEMPLOYMENTSUPPORT.NET while in California.

8. Defendant Pushnami, LLC is a Delaware limited liability company headquartered in Austin, Texas and registered to do business in Texas as a foreign limited liability company. Pushnami publicly identifies its address as 6600 N. Lamar Boulevard, Austin, Texas 78752. Pushnami operates advertising, publisher-monetization, audience,

notification, tracking, and related technology used on third-party digital properties, including technology that collects information from users' browsers and devices.

9. This Court has subject-matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). The proposed Classes include more than 100 members; Plaintiff is a California citizen and, on information and belief, no member of Pushnami is a California citizen; and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs when statutory damages, compensatory and punitive damages, injunctive relief, and attorneys' fees are considered. The identity and citizenship of Pushnami's members are peculiarly within its possession and can be confirmed promptly in discovery.

10. Specific personal jurisdiction over Pushnami in California is proper. Pushnami operates a nationwide advertising and publisher network, serves and facilitates commercial advertising on enabled third-party properties, collects and monetizes data from users in California, and permits advertisers and publishers to target and acquire California traffic. Upon information and belief, Pushnami transmitted or caused the challenged solicitation to reach Plaintiff in California and received or processed data generated by Plaintiff's California browsing session.

11. The claims arise directly from those California contacts. The challenged commercial e-mail reached Plaintiff at a California e-mail address; the resulting campaign delivered her from California into the UNEMPLOYMENTSUPPORT.NET funnel; and Pushnami's technology received, duplicated, processed, and monetized information emitted from Plaintiff's browser while she was physically present in California.

12. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District, including receipt of the challenged e-mail and the resulting browser communications and alleged interception from Plaintiff's California device.

## III. <u>FACTUAL ALLEGATIONS</u>

### A. The False "Pending Check" Solicitation

13. On August 10, 2026, at approximately 5:11 a.m., Plaintiff received the commercial e-mail attached as Exhibit A. The visible sender was "Stimulus Info," the originating address was info@lukeporterbroadcast.net, and the subject line was "PENDING > Check Payout Info Update for Dallas."

14. The body individualized the deception. It displayed a reference number, addressed Plaintiff as "Hi Dallas Pottish," and stated: "A check disbursement is pending your verification. To move this forward, please review the details and confirm your information." It then instructed Plaintiff that the "Next step" was to "Review disbursement details."

15. Those statements were false. There was no check payable to Plaintiff. There was no pending check disbursement. No entity had determined that Plaintiff was owed money awaiting only verification. The message invented an existing financial transaction in order to induce Plaintiff to click.

16. The deception was material. A consumer is far more likely to open and act on a message that appears to concern money already payable to her than a generic advertisement asking her to enter a lead-generation funnel, surrender device and identity information, or become an audience member for advertising and marketing.

17. The e-mail's visible header did not identify Pushnami or the entity actually responsible for transmitting and monetizing the campaign. Instead, it used the generic display name "Stimulus Info" and the opaque domain lukeporterbroadcast.net. The principal embedded click was routed through go.lukeporterbroadcast.net using a long tokenized URL that concealed the ultimate commercial destination from the recipient.

18. The campaign ultimately produced a personalized UNEMPLOYMENTSUPPORT.NET landing-page URL containing affiliate_id=27, a unique transaction_id, source sub-identifiers, and Plaintiff's own name and e-mail address. Those parameters provide a direct technical means of identifying the publisher, campaign, source, click, and commercial participants responsible for the transmission and monetization of Plaintiff's traffic.

19. The e-mail was an unsolicited commercial electronic-mail advertisement. Plaintiff had no preexisting business relationship with Pushnami and did not directly consent to receive a commercial solicitation transmitted by Pushnami, through its publisher network, or on its behalf.

20. The message violated Business and Professions Code section 17529.5(a)(2) because its sender-identifying information materially misrepresented and concealed the commercial source of the message. The deception was not merely a failure to recite a corporate legal name. The header affirmatively presented “Stimulus Info” and an unrelated broadcast-themed domain in connection with a fabricated check-disbursement notice while concealing the commercial advertising and lead-generation infrastructure responsible for the solicitation.

21. The message independently violated section 17529.5(a)(3). The subject line “PENDING > Check Payout Info Update for Dallas” would lead a reasonable recipient to believe that an actual check payout existed. The body confirmed the same supposed fact: “A check disbursement is pending your verification.” No check existed. The subject line was therefore literally false as to the central fact used to induce the recipient to open and click.

22. The deception alleged here is traditional, material, fraud-like deception—not a technical labeling defect. It concerns the existence of money supposedly payable to Plaintiff and the true commercial purpose of the solicitation. The claim accordingly falls within CAN-SPAM’s express preservation of state laws prohibiting falsity and deception in commercial e-mail.

**B. Pushnami’s Advertising and Data-Monetization Platform**

23. Pushnami publicly describes itself as operating an online advertising platform through which advertisements are served on Pushnami properties and enabled third-party properties. Its advertiser materials describe source IDs identifying the publisher website where campaign traffic originates and tracking parameters that carry campaign, creative, source, and other dynamic values through destination URLs.

24. That architecture closely matches the challenged funnel. Plaintiff's personalized destination contained affiliate, transaction, and source-subidentifier fields whose commercial function is attribution. Upon information and belief, Pushnami or a Pushnami-enabled publisher used equivalent campaign and source records to transmit, route, attribute, measure, and monetize the solicitation and Plaintiff's resulting visit.

25. Pushnami's own privacy disclosures further state that Pushnami may send commercial or marketing messages in various formats, including promotional e-mails, and may collect information about users' interactions and transactions with its properties, referring URLs, browser and device information, advertising identifiers, and information obtained from third parties. Those disclosures establish that e-mail marketing, cross-site advertising, and device-level data processing are within Pushnami's ordinary commercial operations.

26. Upon information and belief, the identity of the specific publisher account, source ID, campaign ID, creative, insertion order, traffic source, and payment path used for Plaintiff's solicitation is recorded in Pushnami's systems. Plaintiff does not have access to those internal records before discovery. Rule 8 permits the transmission and agency allegations to be pleaded on information and belief where the operative campaign facts are peculiarly within Defendant's possession.

## IV. PUSHNAMI'S ROLE IN THE CHALLENGED FUNNEL AND TRACKING

27. Plaintiff's investigation further identified Pushnami technology and communications associated with the UNEMPLOYMENTSUPPORT.NET environment. Historical technical scans show a UNEMPLOYMENTSUPPORT.NET host making requests to Pushnami, corroborating that the site participated in Pushnami's advertising or publisher ecosystem.

28. Pushnami's published terms explain the function of that technology. Pushnami software enables a licensee to collect information from users, including e-mail addresses, IP addresses, device push tokens, advertising identifiers, network information,

location information, product preferences, and privacy preferences. Pushnami states that it and the licensee jointly own certain software-generated information and may use, share, market, license, sell, store, and otherwise exploit it to the maximum extent permitted by law.

29. Pushnami's privacy policy likewise states that its technology may collect referring URLs, browser and operating-system information, device identifiers, mobile advertising identifiers, interaction and transaction information, and information used to create a unique identifier or digital fingerprint. It states that Pushnami uses information for cross-device identity resolution, interest-based advertising, analytics, audience development, and marketing.

30. Upon information and belief, when Plaintiff entered the challenged UNEMPLOYMENTSUPPORT.NET funnel, code selected, supplied, configured, or operated by Pushnami caused Plaintiff's browser to initiate one or more separate network communications to Pushnami-controlled or Pushnami-designated endpoints. Those transmissions occurred automatically as pages loaded and as Plaintiff interacted with the funnel.

31. The communications included or derived information revealing the substance and context of Plaintiff's interaction, including the destination and/or referring URL, campaign and transaction identifiers, page or event information, and associated browser, device, cookie, or advertising identifiers. To the extent those requests duplicated or derived information from Plaintiff's live browser communications with the destination site, they were acquired contemporaneously with transmission.

32. Pushnami was not the intended recipient of Plaintiff's communications with UNEMPLOYMENTSUPPORT.NET merely because its code caused Plaintiff's browser to send a duplicate or derivative request. Plaintiff did not navigate to Pushnami, did not seek information from Pushnami, and did not knowingly direct her page requests or form interactions to Pushnami. The alleged acquisition is therefore the kind of simultaneous,

undisclosed third-party duplication recognized as potentially actionable under CIPA. See *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 607–08 (9th Cir. 2020).

33. Plaintiff did not provide prior informed consent to Pushnami's alleged interception or receipt of those communications. Any disclosure or assent presented only after tracking code had already executed could not retroactively authorize an earlier interception. See *Javier v. Assurance IQ, LLC*, 55 F.4th 902, 906–08 (9th Cir. 2022).

34. The intrusion was particularly offensive because the visit itself was procured through a fabricated check-payout representation. A consumer who follows instructions to verify a supposedly pending check does not reasonably expect the resulting browser session to be simultaneously duplicated, fingerprinted, attributed, or monetized by an unseen advertising company for cross-device targeting, audience building, or future marketing.

## V. <u>CLASS ACTION ALLEGATIONS</u>

35. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 on behalf of herself and all similarly situated persons.

36. Plaintiff seeks certification of the following Email Class: All persons who, during the applicable limitations period, received at a California e-mail address a commercial electronic-mail advertisement transmitted, procured, or materially distributed by Pushnami or through the same Pushnami publisher/source campaign as Exhibit A, using the same or materially similar "pending check," "check payout," "check disbursement," stimulus, grant, or financial-assistance representation.

37. Plaintiff further seeks certification of the following Website Interception Class: All persons who, while physically present in California during the applicable limitations period, entered UNEMPLOYMENTSUPPORT.NET or a materially similar Pushnami-enabled campaign destination and whose browser communications were contemporaneously duplicated, derived, or transmitted to Pushnami before the visitor provided valid prior consent.

38. Excluded from the Classes are Defendant; its officers and directors; members of their immediate families; any entity in which Defendant has a controlling interest; the judicial officer assigned to this case and immediate family and staff; Class Counsel and their employees; and persons subject to a valid and enforceable arbitration agreement covering the asserted claim.

39. Numerosity is satisfied because Pushnami operates an advertising and publisher platform at substantial scale, serving campaigns across numerous enabled third-party properties. The precise number of recipients and tracked consumers is within Defendant's campaign, source, impression, click, conversion, and device-level records but is reasonably believed to number in the thousands or more.

40. Common questions predominate, including whether the standardized campaign falsely represented that checks or disbursements existed; whether sender-identifying information materially misrepresented the commercial source; whether Pushnami transmitted, procured, or materially distributed the messages; which source IDs and publisher accounts delivered them; whether Pushnami's technology contemporaneously received or duplicated users' browser communications; what information was transmitted; whether Pushnami was an unauthorized third party; whether valid prior consent existed; and whether the standardized conduct was highly offensive.

41. Plaintiff's claims are typical because she received the challenged standardized solicitation, was routed through the same campaign architecture, and was subjected to the same categories of Pushnami-enabled attribution, tracking, and data processing challenged on behalf of the Classes.

42. Plaintiff will fairly and adequately protect the Classes. She has no interests antagonistic to absent members and has retained counsel experienced in complex consumer and privacy litigation.

43. A class action is superior because the statutory and privacy injuries arise from standardized campaign and technical conduct, Pushnami possesses the key transmission

and tracking records, and individual litigation would be inefficient and economically impracticable.

44. Class membership is ascertainable through objective records including Pushnami publisher and source IDs, campaign and creative IDs, impression and click logs, transaction and affiliate identifiers, destination URLs, timestamps, device/browser identifiers, and related records maintained by Pushnami and its publishers or advertisers.

## VI. CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Violation of Cal. Business & Professions Code § 17529.5

45. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

46. The August 10, 2026, message was a "commercial e-mail advertisement" within the meaning of Business and Professions Code section 17529.1 because its primary purpose was to induce Plaintiff to enter a commercial advertising and lead-generation funnel in which her engagement and information could be monetized.

47. Plaintiff received the message at a California electronic-mail address within the applicable limitations period and had not provided direct consent to receive the commercial advertisement from Pushnami or through Pushnami's advertising or publisher network.

48. The message violated section 17529.5(a)(2) because its sender and header information affirmatively misrepresented and concealed the actual commercial source through the generic "Stimulus Info" display name and the opaque lukeporterbroadcast.net domain while concealing the advertising and lead-generation participants responsible for the solicitation.

49. The message independently violated section 17529.5(a)(3) because the subject line "PENDING > Check Payout Info Update for Dallas" was literally false and likely to mislead a reasonable recipient about a material fact concerning the contents and subject matter of the message. No check payout was pending.

50. The body's statement that "[a] check disbursement is pending your verification" confirms that the false subject line was deliberate and central to the campaign, not an ambiguous shorthand for a generic eligibility advertisement.

51. Upon information and belief, Pushnami transmitted, procured transmission of, or materially participated in distributing the challenged commercial e-mail through a publisher, advertiser, or traffic-source account on its network. Pushnami's own systems are designed to identify the source property, campaign, creative, and click through source IDs and tracking parameters, and those internal records will identify the precise transmission chain.

52. Pushnami also "advertise[d] in" the message within the meaning of section 17529.5 because, upon information and belief, the solicitation was used as part of Pushnami's own advertising and publisher-monetization enterprise to deliver monetizable traffic into a Pushnami-enabled property, generate attributed clicks and consumer data, and create advertising and re-engagement opportunities from the resulting visit. California's statute reaches the commercial beneficiary of deceptive spam notwithstanding the use of publishers or intermediaries to accomplish transmission.

53. The falsity and source deception were material and traditionally deceptive, not technical deficiencies, and therefore fall within CAN-SPAM's express savings clause. Pushnami did not establish and implement with due care practices and procedures reasonably designed to prevent deceptive commercial e-mail distributed through its network, or any such procedures were ineffective as applied to the campaign alleged here.

54. Plaintiff and the Email Class seek liquidated damages, attorneys' fees, costs, injunctive relief, and all other relief authorized by section 17529.5.

## SECOND CAUSE OF ACTION

### Violation of Cal. Penal Code § 631(a)

55. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

56. California Penal Code section 631(a) prohibits, among other things, unauthorized acquisition of the contents or meaning of communications in transit and the aiding or permitting of such interception. The statute applies to Internet communications. *Javier v. Assurance IQ, LLC*, 55 F.4th 902, 906 (9th Cir. 2022).

57. Plaintiff's browser communications with UNEMPLOYMENTSUPPORT.NET included requests for pages and resources, the referring and destination context of those requests, campaign and transaction parameters, and the substance of interactions generated during the session. To the extent a URL, page path, event, or field disclosed what Plaintiff requested, selected, or communicated, it conveyed the substance, purport, or meaning of the communication rather than merely routing information.

58. Upon information and belief, Pushnami's code operated in Plaintiff's browser during the live session and caused the browser to send Pushnami a separate copy, derivative, or event representation of those communications as they occurred. The alleged acquisition was contemporaneous, not a later review of a stored server log.

59. Pushnami was an unauthorized third party to Plaintiff's communications with the destination website. Plaintiff did not seek to communicate with Pushnami and did not knowingly direct her page requests, selections, or interaction data to Pushnami. Simultaneous, unknown duplication of browser communications to an unseen third party does not make that third party a participant to the original communication. See *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 607–08 (9th Cir. 2020).

60. Pushnami acquired and used the information for independent commercial purposes, including campaign attribution, identity and device recognition, audience development, advertising measurement, cross-device advertising, optimization, re-engagement, and other marketing functions described in its own public disclosures. The alleged acquisition therefore was not merely an internal storage function performed solely on behalf of the destination site.

61. Plaintiff did not provide valid prior consent to the challenged interception. To the extent Pushnami or a publisher relies on a later privacy notice, browser prompt, or other disclosure, after-the-fact assent cannot authorize an interception that had already occurred. *Javier*, 55 F.4th at 906–08. Plaintiff and members of the Website Interception Class seek the remedies available under Penal Code section 637.2 and all other appropriate relief.

## THIRD CAUSE OF ACTION

### California Common-Law Intrusion Upon Seclusion

62. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

63. Pushnami intentionally intruded into Plaintiff's private device and browsing session by causing or participating in embedded advertising and tracking technology that accessed, duplicated, or received campaign and transaction information, referral and destination information, browser/device identifiers, and interaction information before Plaintiff knowingly and affirmatively consented to that third-party commercial surveillance.

64. Plaintiff had a reasonable expectation that responding to a representation that an existing "check disbursement" required verification would not automatically and invisibly expose her browsing event, campaign identity, device identifiers, and session activity to an unrelated advertising company for identity resolution, cross-device tracking, audience building, re-engagement, and monetization.

65. The intrusion was highly offensive in context because it combined an intentionally deceptive financial hook with invisible third-party tracking and commercial exploitation. The claim does not rest on the bare transmission of an IP address necessary to serve a webpage; it rests on the totality of Pushnami's alleged acquisition and use of an interaction procured by deception together with persistent device- and campaign-level identifiers.

66. Plaintiff personally experienced the intrusion on her own device and browsing session. She suffered loss of privacy and control over information emitted from her device, unwanted disclosure to a third party, consumption of device and network resources, and interference associated with undisclosed advertising surveillance of an interaction procured through a materially false representation.

67. Pushnami's conduct was intentional and undertaken for commercial benefit. Pushnami publicly describes the relevant collection, identity-resolution, advertising, analytics, and marketing functions as features of its business. To the extent discovery establishes malice, oppression, or fraud within the meaning of California Civil Code section 3294, Plaintiff seeks punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against Defendant as follows:

a. For an order certifying the proposed Classes, appointing Plaintiff as Class Representative, and appointing undersigned counsel as Class Counsel;

b. For statutory and liquidated damages available under California Business and Professions Code section 17529.5;

c. For statutory damages and other relief available under California Penal Code section 637.2 for each proven violation of section 631(a);

d. For compensatory, nominal, and other damages available on Plaintiff's intrusion-upon-seclusion claim;

e. For punitive damages to the extent authorized by California Civil Code section 3294 and proven at trial;

f. For appropriate declaratory and injunctive relief against unlawful commercial-email transmission, third-party interception, tracking, and data-monetization practices;

g. For reasonable attorneys' fees and costs where authorized by law;

h. For prejudgment and post-judgment interest as allowed by law; and

i. For such other and further relief as the Court deems just and proper.

Dated: September 29, 2026

PACIFIC TRIAL ATTORNEYS, APC

By: /s/ Scott J. Ferrell
Scott J. Ferrell
Attorneys for Plaintiff